[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of marriage. The plaintiff, Ross D. Versaggi, and the defendant, Marilen G. Versaggi, married on March 19, 1976, at South Amboy, New Jersey. The plaintiff has resided in the State of Connecticut for at least twelve months next preceding the date of the filing of the complaint. The parties have two children, issue of their marriage: Ross David Versaggi, born December 10, 1977, and Scott Donald Versaggi, born April 10, 1982. The marriage of the parties has broken down irretrievably.
The plaintiff, 46, is a college graduate with an employment history in the banking industry, especially in loan review and loan workouts. Until January, 1996, he was a vice-president with Shawmut Bank. In 1995, his last full year with Shawmut, his total earnings were approximately $89,500, which came by way of $77,500 base salary, and a $12,000 bonus. However, he lost his job with the merger of Shawmut Bank with Fleet Bank in January, 1996. The plaintiff received a $29,000 net severance payment upon his termination. Approximately $11,000 of this severance went to or for the benefit of the defendant and the children. CT Page 5496-WW
Following a period of unemployment, the plaintiff was able to find a part-time job as a mortgage originator for the Independent Mortgage Company, in New Jersey. He started this job only recently before the trial, and has not earned any income from that employment to date. His income is on a commission basis. Based upon the testimony of the plaintiff, the court finds that the plaintiff has an earning capacity in this position of approximately $35,000 per year, gross. Financial orders are based upon that earning capacity. However, the plaintiff is actively seeking full-time employment elsewhere.
The defendant is 47 years old, and is also a college graduate. Her employment and earning history are less certain than the plaintiff's. In 1992, the defendant worked for the Metropolitan Life Insurance Company, and had gross earnings of $55,500 that year. Her earnings remained approximately the same in 1993. For some time prior to February, 1996, the defendant was employed by Mutual of New York. In February, 1996, the plaintiff commenced employment with Excel Telecommunications, but also continued her employment with Mutual of New York. She lost the latter employment in June, 1996, and continued exclusively with Excel. The court finds that her present income from Excel, is approximately $202 per week, gross. She also enjoys rental income which produces another $122 per week, gross. Her net income for both sources is approximately $180 per week. The court basis its financial orders on these earnings rather than her previous earnings, because the court does not believe that the defendant has the present earning capacity she once enjoyed.
As all of the above circumstances indicate, the parties have been in acute financial distress. In June, 1996, the plaintiff filed a Chapter 7 bankruptcy discharge which remains open, in part. Also in 1996, the defendant filed for bankruptcy under a Chapter 13 wage earner plan; she later withdrew this filing. The court finds that the cause of the breakdown of the marriage was largely a financial strain. While both parties share responsibility for the breakdown, the court places the greater responsibility on the defendant because it was her financial expectations that the parties were unable to meet.
The most significant asset of the marriage, and probably the parties' most prominent concern, revolves around their final marital residence. The parties and their children moved from the Danbury area to Greenwich, where they rented twice before finally CT Page 5496-XX buying the present marital residence at 9 Roosevelt Avenue, in Old Greenwich. The parties purchased this home in May, 1988, for $465,000. The parties put equity into the residence of approximately 20%, and financed the remaining 80% with Citicorp. The defendant now lives there with the two children (the oldest child is going to a boarding school this fall); the plaintiff moved out of the marital residence in July, 1995, and he is now living with his parents in New Jersey. The premises have a current fair market value of approximately $425,000. It is encumbered by the Citicorp mortgage of approximately $436,000, a second mortgage of approximately $31,000, and an attachment lien to secure a deficiency judgment for a previously owned property which was foreclosed, of another $43,000. Therefore, there is negative equity in the marital residence. Citicorp, the first mortgagee, is foreclosing against the property and there is a sale date set for December, 1996. The plaintiff's liability for any deficiency has been discharged by the bankruptcy filing.
The court, having considered all of the statutory criteria, enters the following orders:
(1) The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
(2) The parties shall share joint legal custody of the minor child, with physical custody in the defendant and rights of reasonable visitation in the plaintiff.
(3) Child support is ordered to be paid by the defendant to the plaintiff in the sum of $120 per week, which is within the range of the Child Support Guidelines (Appendix A, attached). The court further finds an arrearage of child support in the amount of $130, and orders that this arrearage be paid, at the rate of $24 per week until fully satisfied.
(4) The court orders that the plaintiff pay alimony to the defendant in the sum of $350 per month for a period of 5 years, or until the defendant's death, remarriage or cohabitation pursuant to statute, whichever first occurs.
(5) Except as may be more specifically provided herein, each party shall retain the assets listed on their financial affidavits.
(6) Concerning the marital residence at 9 Roosevelt Avenue, in CT Page 5496-YY Old Greenwich, in the event that there is a foreclosure by sale which results in a deficiency, each of the parties shall be equally responsible for said deficiency and shall indemnify the other against payment of more than said party's equal share, unless discharged by bankruptcy. In the event that the foreclosure by sale produces a surplus, each of the parties shall share equally in said surplus.
(7) Except as may be set forth more specifically herein, each party shall be liable for their own liabilities as listed on their financial affidavits.
(8) The plaintiff shall be solely responsible for the liability denominated as "delinquent taxes" on his financial affidavit; the parties shall be equally liable for the liability listed as "Webster Bank Judgment" on the plaintiff's financial affidavit, and each shall indemnify the other against payment of said liability in excess of said party's equal share, unless discharged by bankruptcy.
(9) The plaintiff shall maintain medical and dental insurance as is available through his employment for the benefit of the minor child. The parties shall be equally responsible for any uninsured or unreimbursed medical and dental expenses for the minor child, including but not limited to medical, hospital, orthodontic, ophthalmological, pharmaceutical, psychological and psychiatric expenses.
(10) The plaintiff shall provide life insurance as such may be available through his employment designating the minor child as irrevocable beneficiary so long as support obligations are in effect, for a sum of $100,000.
(11) Counsel for the plaintiff shall prepare the judgment file.
Dated at Stamford, Connecticut, this 6th day of September, 1996.
JOHN F. KAVANEWSKY, JR., JUDGE
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]